**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Decor Team LLC, et al., | No. CV-19-05346-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Kevin K McAleenan, et al., | |
| Defendants. | |

Before the Court are the parties' cross-motions for summary judgment. (Docs. 41, 43.) For the following reasons, Defendants' motion is granted. Summary judgment is granted to Defendants on all claims.[1]

I.    **BACKGROUND**

A.    **Statutory Framework**

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, establishes "a comprehensive federal statutory scheme for regulation of immigration and naturalization." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 587 (2011) (internal quotations and citation omitted). The INA imposes a numerical quota on the number of immigrant visas that may be issued for permanent residence in the United States. *See* 8 U.S.C. § 1151(a); *Elgamal v. Bernacke*, No. CV-13-00867-PHX-DLR, 2016 WL 3753524, at *1 (D. Ariz. July 14, 2016) (recognizing that numerical quotas are imposed

---

[1] Neither party has requested oral argument. Both parties have submitted legal memoranda and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

because "thousands of aliens seek immigrant visas to enter the United States" each year) (citation omitted). The INA also prioritizes and limits eligibility to certain categories of immigrants, such as those who are family-sponsored or, as is the case here, employment-based. *See* 8 U.S.C. § 1153(a)-(b).

To achieve temporary, nonimmigrant status, an employment-based applicant may apply for an L-1A visa. This type of visa is available to "an alien who within the preceding three years has been employed abroad for one continuous year by a qualifying organization" and who will be employed by that employer in the United States "in a capacity that is managerial, executive, or involves specialized knowledge . . ." 8 U.S.C. § 1101(a)(15)(L); 8 C.F.R. § 214.2(l). An L-1A visa may be extended in increments of up to two years, but the total period may not exceed seven years. 8 C.F.R. § 214.2(l)(15)(ii).

For employment-based immigrants, achieving permanent adjustment of status is generally a three-step process. First, the individual's employer (the "petitioner") files a labor certification application with the U.S. Department of Labor. *See* 8 U.S.C. § 1182(a)(5)(A)(i). Second, the employer files an I-140 petition with United States Citizenship and Immigration Services ("USCIS") on behalf of the immigrant worker (the "beneficiary"). *Id.* § 1154(a)(1)(F). Third, if the I-140 petition is approved, the beneficiary files an I-485 application with USCIS to adjust his or her status to a lawful permanent resident.[2] *See id.* § 1255(a); 22 C.F.R. §§ 42.32(e), 42.41, 42.42.

This process does not guarantee lawful permanent resident status. USCIS may revoke an approved I-140 petition "at any time, for what [the Secretary of Homeland Security] deems to be good and sufficient cause[.]" 8 U.S.C. § 1155; 8 C.F.R. § 103.2(b)(6). Additionally, an employer may withdraw an I-140 petition for any reason and "at any time until a decision is issued by USCIS or, in the case of an approved petition,

---

[2] If located outside the United States, the beneficiary may initiate the permanent residency process by applying for an immigrant visa from the State Department at the United States consular post in his or her home country. 8 U.S.C. § 1255(a); 22 C.F.R. §§ 42.32(e), 42.41, 42.42.

until the person is admitted or granted adjustment or change of status, based on the petition." 8 C.F.R. § 103.2(b)(6). Further, an immigrant is also ineligible for employment-based adjustment of status if he "accepts unauthorized employment prior to filing an application for adjustment of status," "is in unlawful immigration status on the date of filing the application for adjustment of status," or "seeks [employment-based] adjustment of status . . . and is not in a lawful nonimmigrant status." 8. U.S.C. § 1255(c). Finally, even an I-140 approval "does not guarantee or entitle an immigrant to lawful permanent resident status." *Kompella v. United States Citizenship & Immigration Servs.*, No. CV-20-00190-PHX-DJH, 2020 WL 4383815, at \*1 n.1 (D. Ariz. June 12, 2020) (citation omitted).

### B.    Factual and Procedural History

As the Court noted in a previous order, Plaintiff Décor Team, LLC ("Décor Team") is an Arizona company specializing in premium custom curtains and home dressing solutions. (Doc. 1 ¶ 6; Doc. 38 at 1.) Décor Team is a subsidiary of Deco Team Curtains and Upholstery ("Deco Team"), an Israeli company. (*Id*. ¶ 20.) Plaintiff Shai Avisira, a citizen of Israel, is the CEO of Décor Team and has resided in the United States since 2013. (*Id*. ¶ 20.) Defendants were, at the time Plaintiffs filed the Complaint, the Acting Secretary of the Department of Homeland Security, the Acting Director of USCIS, the Associate Director of USCIS Service Centers, and the Director of the USCIS California Service Center, respectively.[3] (*Id.* ¶¶ 8–11.) This case arises out of Décor Team's application to secure employment-based permanent resident status for Mr. Avisira. (Doc. 1.)

In May 2013, USCIS approved an initial L-1A visa (temporary non-immigrant status) for Mr. Avisira. (*Id*. ¶ 21.) Mr. Avisira subsequently sought and obtained three extensions, the final of which expired on May 8, 2020. (Doc. 28 at 7, ¶¶ 6- 9.) On May 2,

---

[3] On the Court's information and belief, at least some of the named Defendants, sued in their official capacity only, no longer hold their respective positions. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, "[a]n action does not abate when a public officer who is a party in an official capacity . . . resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). The Court considers the named Defendants' respective successors to be the proper Defendants at the time of this Order.

2018, Décor Team submitted an I-140 petition on Mr. Avisira's behalf for an employment-based EB-1C immigrant visa, which is commonly referred to as a "permanent residence" or a "green-card" visa. (Doc. 1 ¶ 2; Doc. 33 at 12.) An EB-1C may be issued to "[c]ertain multinational executives and managers" who serve "in a capacity that is managerial or executive." 8 U.S.C. § 1153(b)(1)(C). Décor Team's I-140 petition stated that it sought to employ Mr. Avisira as its Chief Executive Officer and that it would pay him "wages" of "$84,000.00 per year." (Doc. 20 at 24, 46.)

On July 30, 2019, USCIS denied the I-140 petition for three independent reasons. First, Plaintiffs failed to establish that the position at Décor Team qualified as a managerial or executive role. Second, Plaintiffs did not establish that Mr. Avisira's prior position abroad qualified as managerial or executive. Third, USCIS found that Décor Team did not establish its ability to pay Mr. Avisira's proffered wage. (Doc. 20 at 1-11); *see also* 8 C.F.R. § 204.5(g)(2), (j)(2).

Plaintiffs filed a Complaint for Declaratory Relief in this Court on October 8, 2019.[4] (Doc. 1.) They allege that the denial of Mr. Avisira's I-140 petition was arbitrary, capricious, or an abuse of discretion under the Administrative Procedure Act (the "APA"). Defendants filed the sealed Certified Administrative Record on February 21, 2020. (Docs. 20–26; hereinafter "CAR").

Plaintiffs filed a motion for temporary restraining order on February 28, 2020, asking the Court to "maintain the lawful presence" of Mr. Avisira and his derivative spouse pending the outcome of this case. (Doc. 28 at 5.) The Court denied that motion, finding that the relief sought was not "of the same character" as the relief sought in the Complaint. (Doc. 38 at 3.) Plaintiffs have since filed a motion for summary judgment, to which Defendants responded with a cross-motion for summary judgment. (Docs. 41, 43.) Both motions are now fully briefed. (Docs. 46, 47.)

---

[4] Plaintiffs did not appeal the denial of their I-140 petition to the Administrative Appeals Office, which is a permissive administrative remedy. (Doc. 1 ¶ 14); *Ilyabaev v. Kane*, 847 F. Supp. 2d 1168, 1175 (D. Ariz. 2012).

## II.      LEGAL STANDARDS

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (internal citations omitted); *see also Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248).

Courts routinely resolve APA challenges by summary judgment. *See, e.g., Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1481 (9th Cir. 1994). In so doing, courts are generally limited to reviewing the administrative record already in existence. *See San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014). The district court "is not required to resolve any facts in a review of an administrative proceeding." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985).

## III.      DISCUSSION

The APA permits judicial review of a "final agency action for which there is no other adequate remedy in court." 5. U.S.C. § 704. The Court may only set aside the underlying agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). Plaintiffs argue, first, that the

1  denial of the I-140 petition following prior approvals of Mr. Avisira's L-1A visa was, in
2  itself, arbitrary and capricious. Plaintiffs further argue that each of USCIS's three grounds
3  for denying the I-140 petition were arbitrary and capricious. Defendants dispute each of
4  these arguments and assert that, because the evidence contained in the administrative
5  record supports USCIS's decision to deny Décor Team's I-140 petition, they are entitled
6  to summary judgment. (Doc. 43 at 7.) The Court addresses the parties' arguments in turn.

7  ### A.   Prior L-1A Approvals

8  Plaintiffs first argue that Defendants' actions were arbitrary and capricious because
9  "from 2013 until the present, Décor Team has employed Mr. Avisira as an L-1A
10 multinational manager or executive, the nonimmigrant version of the EB-1C petition that
11 is now in dispute." (Doc. 41 at 11.) They note that the requirements for L-1A and EB-1C
12 visas are "nearly identical," and argue that the denial of Plaintiffs' I-140 petition in this
13 context is, "by definition, capricious" and "nothing *but* arbitrary." (*Id*. at 11–12.)

14 The Court is not convinced by these arguments. As Plaintiffs concede, the
15 requirements for the two visas are "nearly," but not, identical. (Doc. 41 at 11); *compare* 8
16 C.F.R. § 214.2(l)(1)(ii)(B), (C) with 8 C.F.R. § 204.5(j)(2); 8 U.S.C. § 1101(a)(44)(A), (B).
17 Further, as a general matter, USCIS is not bound by its previous decisions. *See Seven Star,*
18 *Inc. v. United States*, 873 F.2d 225, 227 (9th Cir. 1989) ("[A] decision by an administrative
19 agency in one case does not mandate the same result in every similar case in succeeding
20 years."). There is an exception for administrative decisions specifically designated as
21 precedential. 8 C.F.R. § 103.3(c). Here, no party asserts that the prior L-1A visa approvals
22 were precedential; as such, these decisions are not binding with respect to the I-140
23 petition. *Cf. R.L. Inv. Ltd. Partners v. I.N.S.*, 86 F. Supp. 2d 1014, 1024–25 (D. Haw. 2000),
24 aff'd, 273 F.3d 874 (9th Cir. 2001) ("It would be ridiculous to require the INS to grant a
25 petition because it had previously granted a similar petition by mistake. That is precisely
26 why unpublished decisions do not create precedent. The agency recognizes that they may
27 be unimportant for wider purposes or, for that matter, may be questionable."). To "conclude
28 otherwise would impermissibly shift the burden from the petitioner, who bears the burden

to establish entitlement to the visa, to USCIS to show that an earlier decision was mistaken." *Healthy & Nat. Trading LLC v. United States Dep't of Homeland Sec.*, No. CV 14-2332 PA (EX), 2014 WL 12564125, at *4 (C.D. Cal. Nov. 12, 2014), aff'd sub nom. 691 F. App'x 437 (9th Cir. 2017).

In addition, as the Court previously noted, the L-1A visa and I-140 petitions serve different functions. An "approved L-1A petition allows a foreign citizen to work, temporarily, for the same company in the United States in a managerial, executive, or specialized position." (Doc. 38 at 4.) In contrast, "an approved I-140 petition is part of a three-step process for obtaining an EB-1C visa, which affords lawful permanent residency." (*Id*.) Courts have noted this distinction in confirming that USCIS is not bound by its L-1A visa determinations in assessing a subsequent I-140 petition. *See, e.g., Noble House, Inc. v. Wiles*, No. CV 12-7816 PA RZX, 2013 WL 1164093, at *7 (C.D. Cal. Mar. 19, 2013) ("The benefits associated with the granting of an I-140 petition—permanent residence—are sufficiently distinct from the status provided by a L-1A visa—temporary non-immigrant status—that the results of USCIS's analysis of an I-140 petition need not automatically mimic the conclusion USCIS reached when it approved an L-1A visa application[.]"). For these reasons, the Court agrees with Defendants that USCIS's prior approvals of Mr. Avisira's L-1A visas do not, in themselves, render the subsequent denial of the I-140 petition arbitrary or capricious.

**B.     "Managerial" or "Executive" Position in United States**

The Court now turns to the substantive bases for USCIS's denial of Plaintiffs' I-140 petition. First, USCIS denied the petition because Décor Team failed to demonstrate that the position offered to Mr. Avisira in the United States qualified as a "managerial" or "executive" position. (CAR at 3.) Plaintiffs argue that Mr. Avisira's job duties make clear that he works in a managerial or executive capacity. (Doc. 41 at 12.) Defendants, in turn, assert that USCIS's determination was "consistent with the governing statute and regulations and is supported by the administrative record." (Doc. 43 at 32.) As discussed below, the Court agrees with Defendants.

The INA defines "executive capacity" as an assignment within an organization in which the employee primarily:

> (A) Directs the management of the organization or a major component or function of the organization;
> (B) Establishes the goals and policies of the organization, component, or function;
> (C) Exercises wide latitude in discretionary decisionmaking; and
> (D) Receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

8 C.F.R. § 204.5(j)(2). "Managerial capacity" means an assignment in which the employee primarily:

> (A) Manages the organization, or a department, subdivision, function, or component of the organization;
> (B) Supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
> (C) If another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization), or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
> (D) Exercises direction over the day-to-day operations of the activity or function for which the employee has authority.

*Id*.

### 1.   Job Duties

In response to Plaintiffs' initial I-140 application, USCIS acknowledged that Décor Team had "provided a letter that lists a breakdown of the beneficiary's job duties for the U.S. position." (CAR 653.) It found, though, that the job duties were provided in "broad and ambiguous terms" and did not "specify the percentage of time that the beneficiary spent performing each activity." (CAR 657.) USCIS also noted that the "description of the

beneficiary's job duties [did] not reveal the specific tasks and percentage of time spent in each specific task that the beneficiary carried out in the course of his daily duties/routine." (*Id*.) As a result, USCIS requested additional, specified information about Mr. Avisara's "U.S. position, duties, and tasks . . . at the time of filing." (*Id*. at 657–58.)

Plaintiffs provided additional materials on or about May 3, 2019. (CAR 669–713.) They included, as described by Plaintiffs, "a letter from Décor Team's parent company . . . describing Mr. Avisira's job duties," a business plan describing his job duties and those of his subordinates, an organizational chart of Décor Team, and a letter from Décor Team "further describing Mr. Avisira's job duties and breaking them down into five primary duties, 14 "secondary duties," and 27 "tertiary duties." (Doc. 41 at 13; Doc. 42 ¶¶ 6–9.)

In its July 30, 2019 decision letter, USCIS acknowledged the new materials, including the "comprehensive list of [Mr. Avisira's] job duties for the U.S. position." (CAR 4.) Nonetheless, it found them to be insufficient. They "did not reveal the specific tasks and the percentage of time spent in each specific task that the beneficiary carried out in the course of his daily duties/routine." (*Id*.) USCIS was accordingly "unable to determine how much time the beneficiary is actually spending in a primarily executive or managerial capacity, versus how much time the beneficiary is actually spending performing non-qualifying duties for the petitioner; and how much time the beneficiary's subordinate/reports are spending performing those non-qualifying duties to relieve the beneficiary." (*Id*.)

It is "well settled that the applicant for a visa bears the burden of establishing eligibility." *ElectroMedical Techs. Inc. v. Nielsen*, No. CV-18-00508-PHX-GMS, 2019 WL 1643746, at *2 (D. Ariz. Apr. 16, 2019) (citation omitted). Further, a visa applicant "cannot qualify for an L-1A visa simply because he performs managerial tasks; such tasks must encompass his *primary* responsibilities." *Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1070 (9th Cir. 2008) (emphasis in original). This requirement "excludes workers whose job involves a mix of management and non-management responsibilities."

1    *A&T Fin. Servs., Inc. v. Rosenberg*, No. SACV 14-780-JLS-RNBX, 2015 WL 10939900,

2    at *5 (C.D. Cal. Mar. 2, 2015) (citation omitted).

3         USCIS reasonably determined that Décor Team failed to establish that Mr. Avisira's

4    job duties were primarily managerial or executive. For example, Plaintiffs' supplemental

5    letter stated that "organizational oversight, development, and expansion" accounted for

6    approximately 24% of his duties. (CAR 676.) This category was divided into subcategories,

7    including "[p]lanning business objectives, developing organizational policies, and

8    establishing responsibilities and procedures for obtaining objectives in the United

9    States"—some of which were further broken down into specific tasks. (*Id.* at 676–77.) This

10   list of responsibilities is "conspicuously lacking in detail as to [Mr. Avisira's] actual day-

11   to-day activities." *A&T Fin. Servs., Inc.*, 2015 WL 10939900, at *5 (citation and internal

12   citations omitted). The descriptions also did not specify which tasks are executive or

13   managerial in nature. *See Kong Hong USA Inc. v. Chertoff*, No. C-06-00804EDL, 2006

14   WL 3068876, at *3 (N.D. Cal. Oct. 27, 2006). Plaintiffs argue that "Defendants fail entirely

15   to say what of these duties would *not* be considered managerial or executive"—but that is

16   Plaintiffs', rather than Defendants', burden to establish. (Doc. 41 at 17); *ElectroMedical*

17   *Techs. Inc.*, 2019 WL 1643746, at *2. Accordingly, USCIS reasonably determined that

18   Décor Team did not demonstrate that Mr. Avisira's actual daily activities were managerial

19   or executive in nature.

20                        **2.    Décor Team's Staffing**

21        Plaintiffs also argue that USCIS arbitrarily and capriciously relied on the company's

22   staffing levels to determine whether Mr. Avisira qualified as a manager or executive. (Doc.

23   41 at 14–15.) The relevant regulation provides that, "[i]f staffing levels are used as a factor

24   in determining whether an individual is acting in a managerial or executive capacity, the

25   Attorney General shall take into account the reasonable needs of the organization,

26   component, or function in light of the overall purpose and stage of development of the

27   organization, component, or function." 8 U.S.C. § 1101(a)(44)(C). Further, "[a]n

28   individual shall not be considered to be acting in a managerial or executive capacity . . . on

1  the basis of the number of employees that the individual supervises or has supervised or
2  directs or has directed." *Id*.

3      Here, Plaintiffs state that a "plain reading of the law makes clear that one can be in
4  a managerial or executive position without relying on staffing levels whatsoever." (Doc.
5  41 at 14.) They argue that USCIS impermissibly relied on "staffing, to the exclusion of
6  other evidence, to determine whether Mr. Avisira qualifies as a manager or executive." (*Id*.
7  at 14–15.) The Court does not agree. It is true that USCIS considered information about
8  Décor Team's staffing. But it indicated that it specifically "consider[ed] the nature of the
9  business and available staffing to relieve the beneficiary of the day-to-day tasks." (CAR
10  4.) As USCIS stated, to demonstrate managerial and executive capacity, the petitioner must
11  prove "that the beneficiary *primarily* performs those specified responsibilities and does not
12  spend a majority of his or her time on day-to-day functions." (CAR 3) (emphasis added).

13      USCIS analyzed Décor Team's staffing in this context. For example, it noted that
14  although Décor Team's initial organizational chart indicated that Ricardo Sanchez was its
15  Production and Warehouse Manager, its subsequent materials stated that Mr. Sanchez was
16  a subcontractor, rather than an employee. (CAR 5.) Further, although Plaintiffs' materials
17  referenced positions including an Office and Human Resource Manager, Online and Social
18  Media Marketing, and Online Sales and Marketing, the supplemental materials "d[id] not
19  indicate who those actual employees are and if those employees work full-time or part-
20  time." (*Id*.) Ultimately, USCIS found that Décor Team did not provide "sufficient evidence
21  to verify who actually worked for Décor Team and could relief Mr. Avisira of primarily
22  performing non-qualifying duties and tasks." (CAR 6.)

23      The Court finds, like others before it, that USCIS properly considered Décor Team's
24  staffing as one factor in determining whether Mr. Avisira performed primarily managerial
25  or executive duties. For example, in *Family Inc. v. U.S. Citizenship & Immigration Servs.*,
26  469 F.3d 1313 (9th Cir. 2006), the Ninth Circuit Court of Appeals noted that the petitioner
27  was "correct to the extent that he argues [the company's] small size, standing alone, cannot
28  justify the USCIS' finding that he is not operating in a managerial capacity." *Id*. at 1315–

16. That argument was "precluded by the plain language of the agency's denial of the petition," however. *Id*. at 1316. USCIS found, in light of the applicant's staffing levels, that the beneficiary "was likely to be involved with performing ordinary operational activities rather than engaging primarily in managerial duties." The agency did "not err by considering [the company's] size as one factor in its determination," as USCIS "may properly consider an organization's small size as one factor in assessing whether its operations are substantial enough to support a manager." *Id. See also Brazil Quality Stones, Inc.*, 531 F.3d at 1070 ("[A]n organization's small size, standing alone, cannot support a finding that its employee is not acting in a managerial capacity, but size is nevertheless a relevant factor in assessing whether [an organization's] operations are substantial enough to support a manager.") (citation and internal quotations omitted).

Similarly, here, Décor Team's staffing was just one factor used to determine Mr. Avisira's role at the company. USCIS also considered information about Mr. Avisira's job duties, the nature of the company, and Décor Team employees' roles (rather than simply their quantity), in reaching its determination. (CAR 4–5.) USCIS therefore did not impermissibly determine Mr. Avisira's eligibility "merely on the basis of the number of employees that the individual supervises or has supervised or directs or has directed." 8 U.S.C. § 1101(a)(44)(C).

Because this was a permissible reason to deny Plaintiffs' I-140 petition, the Court need not reach the other bases for the denial. *See Tucson Herpetological Soc. v. Salazar*, 566 F.3d 870, 880 (9th Cir. 2009) ("We will . . . sustain an agency decision resting on several independent grounds if any of those grounds validly supports the result, unless there is reason to believe the combined force of these otherwise independent grounds influenced the outcome.") (*citing Carnegie Natural Gas Co. v. FERC*, 968 F.2d 1291, 1294 (D.C. Cir. 1992)). Nonetheless, the Court next turns to these arguments.

## C.     Overseas Position

USCIS also denied Plaintiffs' I-140 petition on grounds that Décor Team failed to establish that Mr. Avisira's prior position abroad qualified as a managerial or executive

role. (CAR 6.) A petition for a multinational executive or manager must be accompanied by a statement from an authorized official of the United States employer demonstrating:

> If the alien is already in the United States working for the same employer or a subsidiary or affiliate of the firm or corporation, or other legal entity by which the alien was employed overseas, in the three years preceding entry as a nonimmigrant, the alien was employed by the entity abroad for at least one year in a managerial or executive capacity; . . .

8 C.F.R. § 204.5(j)(3)(i)(B).[5] The same definitions for "managerial" or "executive" capacity as discussed above apply in this context, as well. *See* 8 C.F.R. § 204.5(j)(2). Plaintiffs assert that, prior to entering the United States in 2013, Mr. Avisira served in executive positions at Décor Team's foreign parent company, Deco Team, in Israel. (Doc. 41 at 17.) He served as Deco Team's Acting Vice President from 2008 to 2010,[6] and as Vice President from 2010 to 2013. He also served as the President of one of Deco Team's other subsidiaries, Deco Home, from 2010 to 2013. (CAR 684-687; Doc. 42 ¶ 9.)

USCIS concluded that the evidence did not show that Mr. Avisira was employed in a managerial or executive capacity abroad for at least one year. Similarly to the domestic position, USCIS initially noted that Plaintiffs submitted a letter providing the breakdown of Mr. Avisira's job duties at Deco Team in Israel, but the descriptions were "given in broad and ambiguous terms and d[id] not specify the specific percentage of time that the beneficiary spent performing each specific duty." (CAR 656.) Plaintiffs also did not provide details on his specific daily tasks and the percentage of time spent on them, which rendered USCIS "unable to determine how much time the beneficiary was actually spending in a primarily executive or managerial capacity." (*Id.*) USCIS also noted that Plaintiffs did not provide adequate information about Mr. Avisira's subordinates, including their "job duties, educational levels, salaries, whether work was full-time or part-time,

---

[5] 8 C.F.R. § 204.5(j)(3)(i)(A) also contains requirements for beneficiaries physically located in the United States, which are not applicable here.
[6] Plaintiffs' Response to Request for Evidence (CAR 684–690) also states that Mr. Avisira served as Vice President of Deco Team from 2005 to 2008, but Plaintiffs' motion for summary judgment does not indicate as much. (Doc. 41 at 17.)

1    whether those subordinates were direct or indirect reports, and if those subordinates

2    supervised other subordinates" in connection with the foreign position. (*Id.*) USCIS

3    requested specified additional evidence to address these issues. (CAR 656–57.)

4           Plaintiffs submitted additional information, including "an organizational chart from

5    the time Mr. Avisira was employed with Deco Team, pay stubs for Mr. Avisira at that time,

6    a current organizational chart, and a letter from Deco Team laying out Mr. Avisira's history

7    with the company and providing breakdown of his job duties, again, with a breakdown in

8    percentages of the time spent in each major task." (Doc. 41 at 17; CAR 684–95.) USCIS

9    ultimately found this information to be insufficient. As above, USCIS found that Mr.

10   Avisira's "comprehensive" list of job duties "was not broken down with the specific

11   percentage of time the beneficiary spent performing each specific duty," and it therefore

12   was "unable to determine how much time the beneficiary was actually spending in a

13   primarily managerial or executive capacity." (CAR 7.) Further, Plaintiffs did not provide

14   adequate information about Deco Team's employees to confirm that the "beneficiary

15   should be free of interference of performing non-qualifying duties and tasks necessary to

16   produce a product or to provide services." (CAR 8.)

17          Upon review of the materials submitted by Plaintiffs, and for similar reasons as

18   above, the Court finds that USCIS dd not err in concluding that Décor Team failed to

19   establish that Mr. Avisira was employed in a managerial or executive capacity abroad for

20   at least one year. For this independent reason, denial of the I-140 petition was proper. *See*

21   *Dezire Trip Private Ltd. v. Kelly*, No. C16-1854JLR, 2017 WL 3085751, at *6 (W.D.

22   Wash. July 20, 2017) (granting defendants' motion for summary judgment where

23   "USCIS's conclusion that [the company] did not establish that [the beneficiary] was

24   employed for at least one year in a managerial or executive capacity abroad was not

25   arbitrary or capricious").

26                          **D.    Ability to Pay**

27          Lastly, USCIS denied the I-140 petition because Décor Team failed to demonstrate

28   its ability to pay the annual proffered wage, $84,000, for the position offered to Mr. Avisira.

- 14 -

An I-140 petition must be accompanied by evidence of the company's ability to pay the proffered wage "at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence. Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements." 8 C.F.R. § 204.5(g)(2). Further, in "appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by the Service." *Id.*

USCIS found that Plaintiffs' initial materials were insufficient because the net income shown on Décor Team's 2017 federal tax return was negative $37,359.00, and the current net assets were negative $16,187.00. (CAR 654.) For this and other reasons, USCIS was "unable to determine how [Décor Team] has sufficient funds to pay all the employees and the beneficiary." (*Id.*) It requested evidence including complete copies of its 2017 and 2018 annual reports, audited financial statements, or tax returns. (*Id.*) Décor Team could also submit "additional evidence" demonstrating that it had paid Mr. Avisira the proffered wage, but it "could not submit additional evidence in place of initial evidence unless [it] demonstrate[d] that initial evidence does not exist or [it] cannot obtain it." (CAR 655.)

In response, Décor Team submitted its "bank statements, Financial Statement (for the month ending March 31, 2019), 2018 Federal Tax Return and Form 941 Federal Quarterly Tax Report." (CAR 8.) USCIS found this material to be insufficient because, first, bank statements are not among the types of permissible evidence pursuant to 8 C.F.R. § 204.5(g)(2). Further, although the relevant regulation permits additional evidence "in appropriate cases," Plaintiffs did not demonstrate that the "required evidence [was] inapplicable, inaccurate, or unavailable." (CAR 8-9.) In addition, USCIS found that no evidence was submitted to demonstrate that the funds on petitioner's bank statements "somehow reflect additional available funds that were not reflected on its tax returns." (CAR 9.) The Court finds that these were reasonable conclusions, as the employer bears the burden to "show that it has the ability to pay the proffered wage." *Estrada-Hernandez v. Holder*, 108 F. Supp. 3d 936, 940 (S.D. Cal. 2015). *See also Rizvi v. Dep't of Homeland*

1  *Sec. ex rel. Johnson*, 627 F. App'x 292, 294 (5th Cir. 2015) (finding that USCIS's refusal

2  to consider company's tax returns was not arbitrary or capricious because "the bank

3  statements do not make up for the shortfalls because they are mere snapshots of cash

4  available on a given date rather than a depiction of ongoing assets").

5         Plaintiffs also argue that USCIS disregarded the fact that the bank statements

6  demonstrated renumeration to Mr. Avisira. (Doc. 41 at 21.) Décor Team indicated, in a

7  supplemental letter to USCIS, that it:

> provides Mr. Avisira a monetary salary of $4,000 per month.
> Additionally, Décor Team spends $1,224.71 per month on an
> auto lease, $171.58 per month on auto insurance, and
> $1,605.77 per month on the mortgage (Amerihome) for Mr.
> Avisira's home in the United States. Therefore, in addition to
> his salary, Décor Team is remunerating Mr. Avisira with an
> annual $3,002.06 per month. Yearly this amounts to
> $36,025.72. In conjunction with the $48,000 annual salary, Mr.
> Avisira's annual compensation amounts to $84,024.72.

15  (CAR 712.) Plaintiffs' motion indicates that the bank statements "evidence additional

16  monthly remuneration Mr. Avisira receives of $3,002.06, or $36,025.72 per year." (Doc.

17  41 at 21.) Nonetheless, upon the Court's independent review, the bank statements do not

18  indicate any payments of $3,002.06, nor do they show that any payments were made to Mr.

19  Avisira.[7]

20         USCIS also found that the other provided evidence did not indicate an ability to pay

21  Mr. Avisira's proffered wage. For example, the net income on Décor Team's 2018 federal

22  tax return was $7,707, and net assets were $0. (CAR 9.) USCIS also indicated that "it was

23  unclear how much the petitioner is actually paying the beneficiary and how much the other

24  employees are being compensated." (*Id.*) Upon review, the Court agrees that this was a

25  reasonable conclusion compelled by the records.

26         Plaintiffs also invoke *In re Matter of Sonegawa*, 12 I. & N. Dec. 612 (BIA 1967),

---

[7] To the extent that the bank statements reflect a combination of payments made to Mr.
Avisira under a "Payroll" description or otherwise, Plaintiffs did not meet their burden to
demonstrate as much to USCIS or to the Court. *Estrada-Hernandez*, 108 F. Supp. 3d at
940.

1   in which the Board of Immigration Appeals determined that even if an employer cannot

2   establish the ability to pay a proffered wage at all times, it can still establish a sufficiently

3   reasonable expectation of *future* profits based on a "totality of the circumstances." *Id.*

4   Plaintiffs assert that USCIS erred because it "did *not* conduct anything resembling a totality

5   of the circumstances inquiry based on the record evidence before it." (Doc. 41 at 22.)

6   *Sonegawa* is applicable "only if the failure of [the company] to pay the proffered wage was

7   an anomaly amongst profitable years." *Taiyang Foods Inc. v. U.S. Citizenship &*

8   *Immigration Servs.*, 444 F. App'x 115 (9th Cir. 2011). Plaintiffs make no such argument.

9   Further, in this case, USCIS requested specific supplemental materials demonstrating an

10  ability to pay, which Décor Team did not provide. (CAR 654.) And "[t]he fact that USCIS

11  declined to make [a *Sonegawa*] exception . . . does not evidence an abuse of the agency's

12  discretion*." Estrada-Hernandez*, 108 F. Supp. 3d at 946 (citation omitted).[8]

13                          *                    *                    *

14          For all of these reasons, Plaintiffs have not demonstrated that any of USCIS's

15  independently sufficient reasons for denying their I-140 petition were arbitrary or

16  capricious. In addition to their claims under the APA, Plaintiffs also assert a claim for *ultra*

17  *vires* agency action, asserting that the denial of Plaintiffs' I-140 petition was "in violation

18  of Defendants' statutory duty to administer the INA and relevant regulations." (Doc. 1

19  ¶ 95.) As described herein, the Court finds that Defendants fully complied with the INA

20  and relevant regulations. Summary judgment is appropriate on this claim, as well.

21  Defendants, accordingly, are entitled to summary judgment on all of Plaintiffs' claims.

22  **IV.    CONCLUSION**

23          Accordingly,

24          **IT IS ORDERED denying** Plaintiffs' Motion and Memorandum In Support of

25  Motion for Summary Judgment. (Doc. 41.)

26  _____

27  [8] Plaintiffs also make much of the meaning of the word "remuneration" in 8
    C.F.R. § 204.5(h)(3)(ix), to the extent that it "does not mean solely and exclusively cash
    payments." (Doc. 41 at 23.) Given that Plaintiffs have not demonstrated that Décor Team

28  had the ability to pay the proffered wage in any form, however, this distinction is not
    persuasive.

1    **IT IS FURTHER ORDERED granting** Defendant's Cross-Motion for Summary

2    Judgment (part of Doc. 43).

3    **IT IS FINALLY ORDERED** that the Clerk of Court shall enter judgment in favor

4    of Defendants and against Plaintiffs. The Clerk of Court shall close this case.

5    Dated this 19th day of February, 2021.

6

7

8    _Michael T. Liburdi_
     Michael T. Liburdi

9    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28